## SUPREME COURT.

### ABEL WHEATON agt. JACOB VOORHIS, Jr., *et al.*

*Mortgage foreclosure — Defense usury — Answer — Evidence — Variance.*

The acceptance by the lender from the broker of any portion of his commissions does not constitute usury.

The representations of the agent of the lender do not bind the principal unless authorized by him, or the fruits of such representations are received by the lender with knowledge of their origin.

The question in such case would seem to be, did the lender receive the money from the broker for the purpose of evading the usury law, or for the purpose of receiving more than seven per cent for the loan of his money.

Usury must be strictly proven as alleged, and any variance is fatal.

Where the allegations in the answer are, that the plaintiff took $2,900 in excess of legal interest for the loan or forbearance of the mortgage debt, while the evidence shows that the total amount received by the plaintiff was $2,125: *Held*, to be a variance which is fatal.

A motion at the close of the case to conform the pleadings to the proof can never be granted where the admission of the evidence has been promptly objected to upon the ground that the evidence did not tend to support the allegations in the answer.

*Special Term, May,* 1877.

IN January 1873, one George W. Willet was the cashier of the Bull's Head Bank, of which bank the defendant Voorhis was a director, and of which both Wheaton and Voorhis were depositors. At or about the above date, the plaintiff having $50,000 which he desired to invest, asked the said Willet if he could not find among his customers some one who desired to borrow this money, and could give good security therefor. Willet replied that he would make inquiry

among his customers, and in a day or two offered as security
for the loans, a piece of property on the Eighth avenue which
was examined by the plaintiff and refused. The said Willet
shortly after told the plaintiff that he had a lager beer brewery
to offer as security, and at the same time told the plaintiff
that if he would allow him, Willet, to place his money that he
would divide what commissions he should receive. The plain-
tiff thereupon examined the lager beer brewery, and rejected
it as security for the loan. The said Willet then asked the
defendant Voorhis if he did not desire to borrow $50,000,
and if he could not give good security therefor. The said
Voorhis said that he did, and offered as security the premises
mentioned in the complaint. Willet asked what bonus or
commission he was willing to pay for such a loan? Voorhis
replied, eight per cent. Willet thereupon submitted an
application for the loans to Voorhis, upon the property men-
tioned in the complaint to the plaintiff, who after having had
the premises appraised, notified Willet that he accepted the
security for the loan, and also notified him that the title would
be examined by Messrs. Norwood and Coggeshall, who would
want any papers Mr. Voorhis had relating to the title. Mr.
Willet then informed Mr. Wheaton that he had to pay all the
expenses for the examination of the title, and subsequently fur-
nished Mr. Wheaton with an order signed by Mr. Voorhis upon
his attorney for the title papers, which order Mr. Wheaton
handed over to his attorneys Norwood and Coggeshall. At Mr.
Coggeshall's request, Mr. Wheaton asked Mr. Willet to go
down to their office, to make arrangements about the searching
of the title which he, Willet, was to pay. Upon their way down
town to the lawyer's office Mr. Willet told Mr. Wheaton that
he was going to pay him $2,000 out of his (Willet's) commission
in this transaction. This was the first conversation that Willet
and Wheaton had in respect to division of commissions since
the rejection of the lager beer brewery proposal. Mr. Willet,
upon arrival at the attorney's office, made an agreement with
them that they would search the title for $600. Upon exam-

ination, the title having proved more difficult than was supposed, the attorneys demanded $250 more, which Mr. Voorhis agreed to pay. The title having been examined and found satisfactory, the parties were to meet upon the 5th of February, 1873, at the office of Mr. Wheaton's attorneys, for the purpose of concluding the loan. At Mr. Willet's request, Mr. Voorhis drew a check to the order of Mr. Willet for $850; also a check to his own order for $500, and another for $2,900. Having indorsed the two last named checks in blank, Voorhis delivered the three to Mr. Willet, who thereupon drew the money upon the $2,900 check. Then Mr. Voorhis and Mr. Willet went to the plaintiff's attorneys' office and there met the plaintiff, and the transaction was completed, Mr. Wheaton paying Mr. Voorhis $50,000 and taking the bond and mortgage in suit. Mr. Willet indorsed and transferred the $850 check to the plaintiff's attorneys, and the parties left. Subsequently, on the same day, at Mr. Willet's bank, Mr. Willet paid to Mr. Wheaton $2,125, telling him for the first time of Mr. Voorhis payment of the $250 extra.

This action is brought to foreclose said mortgage, and the defense is usury.

*Choate*, and *Norwood & Coggeshall*, for plaintiff.

*Porter & Beach*, for defendants, argued the following points:

The proofs in this case on the part of the defendants substantially establish the fact that plaintiff retained the witness George W. Willet to procure an investment for the sum of $50,000 upon bond and mortgage, to be approved by plaintiff.

*Whatever bonus, advantage or commission should be derived by the investment from the borrower was to be divided between the plaintiff and his agent Willet.* Willet so testifies, and plaintiff states that Mr. Willet announced his willingness thus to share any bonus or profit, and plaintiff at the time

was silent (as he states), but permitted the negotiation to proceed .to consummation, and the bond and mortgage in question was thus brought into existence.

When the loan was closed, and as a part of the transaction, plaintiff received from defendant Voorhis, through the hands of his own agent, Mr. Willet, the sum of $2,125 in cash.

If there was no actual contract or arrangement with plaintiff as to usurious interest before this time, there certainly was a proposition matured into acceptance on the receipt of this sum of $2,125.

It is not necessary to prove an actual agreement *in language* for the payment and receipt of usurious interest, in order to substantiate and establish usury (*Powell* agt. *Waters*, 8 *Cow.*, 696; *Fielder* agt. *Darrin et al.*, 50 *N. Y.*, 437; *Birdsell* agt. *Patterson*, 51 *id.*, 43; *Alger* agt. *Gardiner*, 54 *id.*, 360).

It is certainly observable, to a marked degree, that the *three checks* drawn by defendant Voorhis to pay the bonus under his agreement with plaintiff, made through his agent, Mr. Willet, should be drawn, *under .Willet's direction*, one for $850, for the lawyers; the second for $500, to pay Willet's commission; while the other check is drawn for the sum of $2,900, the amount Mr. Willet had told defendant Voorhis was to be paid over to plaintiff.

Mr. Willet does not deny that he gave directions to have the checks thus drawn, nor does Mr. Willet *positively* deny that he told defendant Voorhis that the bonus money was to be divided as above indicated.

Mr. Willet simply says that he *thinks* he did not so state.

This want of positive recollection cannot certainly overcome the affirmative recollection of defendant Voorhis, particularly when the checks are produced, drawn by direction of Mr. Willet, specifying the different amounts, as defendant Voorhis states, they were to be applied or assigned to the different parties.

VAN BRUNT, *J.* — It may be said that in the foregoing statement of the case, that the testimony of Mr. Voorhis has not been duly considered, but I am of the opinion that Mr. Voorhis' recollection as to what Mr. Willet told him about the disposition to be made of the eight per cent commission is based entirely upon the amounts of the checks drawn by him and given to Willet. There is nothing in this case which leads to the conclusion that Mr. Willet made any false statements to Mr. Voorhis in regard to this loan, which must have been the fact if Mr. Voorhis' evidence is correct, and it is very easy to conceive by what process of reasoning Mr. Voorhis would come to the conclusion, upon an inspection of his three checks, that Mr. Willet had told him that the $2,900 was to be paid to Mr. Wheaton. It seems to me, therefore, that we must conclude that Mr. Voorhis is mistaken in relation to this matter.

The naked proposition which must be determined in this case, then, is whether the acceptance by the lender from the broker, of any portion of his commissions, constitutes usury?

It is claimed, upon the part of the defense, that Mr. Willet in this transaction was the agent of the plaintiff, and that consequently the plaintiff is bound by his representations. I am unable to see that Mr. Willet was any more the agent of the plaintiff than he was of the defendant, in fact. Mr. Voorhis was to pay him for his services in this matter, which would seem to indicate that he considered that Mr. Willet was his agent. But perhaps it is not of very great importance in the disposition of the question involved whether Mr. Willet was the plaintiff's or defendant's agent.

The case of *Estervez* agt. *Purdy*, decided in the court of appeals, but not yet reported, expressly decides that the representations of the agent of the lender do not bind the principal unless authorized by him, or the fruits of such representations are received by the lender with knowledge of their origin.

The question, then, in this case would seem to be, did the

plaintiff receive the money from Willet for the purpose of evading the usury law, or for the purpose of receiving more than seven per cent for the loan of his money. I think that both of these propositions may unhesitatingly be answered in the negative. The evidence seems to show, beyond dispute, that at the time of agreeing to make the loan the plaintiff was not, in any manner, influenced in the making thereof by the promise of Willet to divide any commission which he might make upon the loan. At the time of agreeing to make the loan the plaintiff had no knowledge what commission Willet was to receive from Voorhis, or whether he was to receive any commission, and his desire seems to have been to invest his money in some good security at a legal rate of interest.

The plaintiff, in receiving this money from Willet, supposed that he was receiving a portion of that which belonged to Willet and which he had a right to dispose of as he saw fit. Under such circumstances I cannot see that there was any intent upon the part of the plaintiff to take from the defendant more than seven per cent for the use of his money.

The case of *Alger* agt. *Gardner* (54 *N. Y.*, 360) is cited by the defendants as an authority to show that the case of *Condit* agt. *Baldwin* has been limited by subsequent decisions. The case of *Estervez* agt. *Purdy* (*supra*), shows that the court of appeals do not consider that the case of *Condit* agt. *Baldwin* has been at all restricted by the case of *Alger* agt. *Gardiner.*

There is, however, another objection raised by the plaintiff in this action to the defense of usury as claimed to be established by the evidence in this case, and that is, that there is a fatal variance between the allegation of the answer and the evidence. It seems to be held in the case of *Hetfield* agt. *Newton* (3 *Sandf. Ch. R.*, 564), and cases there cited, that usury must be strictly proven as alleged, and any variance is fatal. The allegations in the answer in this case are, that the plaintiff took $2,900 in excess of legal interest for the loan or forbearance of the mortgage debt, while the evidence

Wheaton agt. Voorhis *et al.*

shows that the total amount received by the plaintiff was $2,125, a variance which, according to the cases above cited, is fatal.

To obviate this objection the defendants, at the close of the case, moved to conform the pleadings to the proof. I do not understand that such a motion can ever be granted where the admission of the evidence has been promptly objected to, as was done in this case, upon the ground that the evidence did not tend to support the allegations in the answer.

I think, therefore, that the plaintiff is entitled to judgment of foreclosure and sale.